UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

E.F., by his parent and next friend,
MARIBEL REYES,

                                                 Plaintiff,

          -vs-

                                                 05-CV-562C

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                                               Defendant.

---

      Plaintiff E.F., a minor, by his parent Maribel Reyes, initiated this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Social Security income ("SSI") benefits.[2] The Commissioner has filed a motion for judgment on the pleadings (Item 8), and plaintiff has cross-moved for the same relief (Item 25) pursuant to Fed. R. Civ. P 12(c). For the following reasons, the Commissioner's motion is granted, and plaintiff's cross-motion is denied.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007 and is thus substituted for former Commissioner Jo Anne Barnhart as defendant in this case. *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. §405(g).

[2] This case was transferred to the undersigned by order of the Hon. Richard J. Arcara dated July 13, 2007. A previous referral to Magistrate Judge H. Kenneth Schroeder was rescinded in an order dated August 20, 2007 (Item 20).

**BACKGROUND**

Plaintiff was born on November 9, 1990 (T. 66).[3] He applied for SSI benefits on March 14, 2002 alleging a disability onset date of November 8, 1993 (Id.)  The application was denied on June 21, 2002 (T. 33-36).  Plaintiff then requested an administrative hearing, which was held on September 7, 2004 before Administrative Law Judge ("ALJ") William R. Pietz and where he appeared with a paralegal representative (T. 365-77).  On October 27, 2004, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled and not entitled to SSI benefits (T. 24-31).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review on June 10, 2005 (T. 6-9).  On August 9, 2005, plaintiff instituted this action, seeking judicial review of the Commissioner's final determination (Item 1).  The Commissioner filed an answer on December 23, 2005 (Item 6).  Thereafter, the Commissioner moved for judgment on the pleadings on March 23, 2006 (Item 8), and after seven requests for an extension of time, the plaintiff cross-moved for the same relief on March 14, 2008 (Item 25).  The Commissioner filed a reply to the motion on April 4, 2008 (Item 26).  For the reasons that follow, the plaintiff's motion is denied, and the Commissioner's motion is granted.

---

[3] References preceded by "T." are to page numbers of the transcript of the administrative record filed by defendant as part of the answer to the complaint (Item 6).

**DISCUSSION**

**I.     Scope of Judicial Review**

Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(I).

The Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. §405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir.  1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may neither try the case *de novo* nor substitute its findings for those of the Commissioner.  *Richardson,* 402 U.S. at 401.  "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel,* 2000 WL 575513, at *2 ( W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (2d Cir. 1982).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light

of correct legal standards." *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II.   Standards for Determining Eligibility for Disability Benefits

The regulations set forth a sequential process for the ALJ to follow in evaluating SSI claims for minor children. *See* 20 C.F.R. §416.924. First, the ALJ must determine whether the child has engaged in substantial gainful activity. If so, the child is ineligible for SSI benefits. 20 C.F.R. § 416.924(b). If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c). If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1). If the claimant does not have a listed impairment, the ALJ must assess the child's functional limitations caused by the impairments by considering six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos v.*

*Barnhart*, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003).  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I).  Functional equivalence is obtained by a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity at any time during the relevant period (T. 25).  In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from a learning disability, speech/language delays, and a history of back pain.  The ALJ found that these impairments, while "severe," do not meet or equal the requirements of the Listings (T. 28).  Proceeding to the final step of the sequential evaluation process, the ALJ found that plaintiff has less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and with his health and physical well-being (T. 29).  Plaintiff's allegations were considered but were not found to be credible or supported by the evidence of record (T. 30).  Accordingly, the ALJ found that plaintiff was not suffering under a disability at any time and was not eligible for SSI benefits (T. 31).

The Commissioner contends that the ALJ's findings are supported by substantial evidence.  Plaintiff contends that the ALJ erred in failing to properly assess the weight to

be given to the opinion of plaintiff's treating physician. Plaintiff also argues that the ALJ improperly substituted his opinion for that of the treating physician.

### III.   The Treating Physician's Opinion

Plaintiff argues that the ALJ failed to follow the appropriate analysis for assigning weight to the treating physician's opinion. The Social Security Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 416.927(d)(2); *see also Rosa v. Callahan,* 168 F.3d 72, 78-79 (2d Cir. 1999). If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 416.927(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. 2001).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In his decision, the ALJ considered a consultative psychological examination by Thomas Dickinson, a consultative physical examination by Steven Dina, M.D., a state agency medical review of plaintiff's records, and the medical records from plaintiff's mental health provider, Child and Family Services. The ALJ also considered records and evaluations by the Buffalo Public Schools. The ALJ noted a report, dated August 2004, containing the opinion of plaintiff's treating psychiatrist, Dr. Adegbite, that plaintiff suffered from dysthymic disorder and attention deficit hyperactivity disorder ("ADHD") which met the requirements of the Listings.

The ALJ noted that Dr. Adegbite's August 2004 opinion was contained in a "mere 'check block' form . . . prepared for litigation." (T. 28). He further stated that the opinion was not a treatment note and was "somewhat inconsistent with the diagnosis of dysthymia, which often but not always, connotes lesser gravity than major depression." *Id.* The ALJ also found the opinion inconsistent with a global area of functioning ("GAF") of 50-60. *Id.* Finally, the ALJ found the opinion of Dr. Adegbite inconsistent with the medical evidence of record.

The ALJ found that plaintiff had less than marked limitations in all domains, and largely agreed with the state agency review physician. In his consultative examination dated May 20, 2002, psychologist Thomas Dickinson determined that plaintiff suffers from

an adjustment disorder with mild depression, learning disorder, and reading disorder, with a fair prognosis with special education services (T. 227). Dr. Dickinson found plaintiff cooperative with adequate social skills (T. 224) and mildly impaired attention and concentration (T. 225). Plaintiff's sleep and appetite were normal, yet his mother reported problems with anger and self-esteem (T. 224). Orientation testing found poor levels overall, and plaintiff's cognitive functioning was rated at dull normal with limited insight and judgment. *Id.* Dr. Dickinson found plaintiff limited in the following areas: following and understanding age-appropriate directions, completing age-appropriate tasks, and maintaining adequate social behavior for his age. (T. 226). Additionally, Dr. Dickinson observed plaintiff's difficulties in learning at the expected age level and interacting with peers and adults at an age-appropriate level. *Id.*

The record also indicates that plaintiff began counseling sessions with Elizabeth Barcena, M.S.W. at Child and Family Services ("CFS") in March 2002. He was having behavioral problems at home, and trouble remembering things he learned at school (T. 246). Ms. Barcena worked with plaintiff on study skills, anger management, and self-esteem. By 2004, treatment notes indicate that plaintiff "was doing well in all classes except music," (T. 267), appeared "extremely happy" with his academic performance (T. 264), and was feeling better about his language skills. *Id.* Despite his continued inability to maintain focus and concentration in school, plaintiff reported " a little academic progress" (T. 266).

In his report of August 2004, Dr. Adegbite diagnosed plaintiff with ADHD and dysthymic disorder.[4]  He also concluded that plaintiff suffered from "major depressive syndrome," which is characterized by a depressed or irritable mood, markedly diminished interest or pleasure in almost all activities, appetite or weight increase or decrease, sleep disturbance, fatigue or loss of energy, feelings of worthlessness or guilt, and difficulty thinking or concentrating (T. 308).  Dr. Adegbite stated that plaintiff demonstrated a marked impairment in age-appropriate cognitive/communicative function and social functioning, and deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (T.309), thus satisfying Listing 112.04.

In his decision, the ALJ adequately explained his reasons for giving less than controlling weight to the opinion of Dr. Adegbite.  Specifically, the ALJ noted the treatment by CFS from 2002 to 2004 and the inconsistency between the treatment notes and the August 2004 report.  The treatment notes of Ms. Barcena indicate plaintiff's feelings of low self-esteem and difficulty in completing school work, but also show plaintiff's academic progress, increased self-esteem and self-motivation, and an improvement of his depression on a medication regimen. The treatment notes do not indicate the characteristics of a major depressive disorder, as found by Dr. Adegbite in August 2004, including a depressed or irritable mood, sleep disturbances, fatigue and loss of energy, markedly diminished loss of interest in all activities, and feelings of worthlessness or guilt. Accordingly, the ALJ properly assessed the weight to be accorded the opinion of Dr.

---

[4] According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), dysthymic disorder is characterized by chronic depression, but with less severity than major depression.  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 348 (4th ed. 1994).

Adegbite, and gave a valid reason for rejecting Dr. Adegbite's conclusion that plaintiff suffered from a major depressive syndrome that satisfied the Listings.

### IV.     The ALJ's Unsupported Medical Conclusion

Plaintiff also argues that the ALJ substituted his own opinion for that of Dr. Adegbite when he arrived at the unsupported conclusion that Dr. Adegbite's findings of marked limitations were inconsistent with a GAF of 50 to 60.  In fact, Dr. Adegbite assessed plaintiff's GAF as 50 to 60 on October 14, 2003 (T. 304).  According to the DSM-IV, a GAF score of 51 to 60 corresponds to moderate symptoms and/or moderate difficulty in social, occupational or school functioning.  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).  Accordlingly, it was not improper for the ALJ to find Dr. Adegbite's opinion of marked cognitive and social limitations inconsistent with a GAF of 50 to 60.

### CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings (Item 7) is denied, and the Commissioner's cross-motion (Item 8) is granted.  The Clerk shall enter judgment in favor of the defendant.

So ordered.

_____\s\ John T. Curtin\_\_
JOHN T. CURTIN
United States District Judge

Dated: ~~July~~   August 5   , 2008
p:\opinions\05-562.jul908